UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LANINKA OFFICE,
*on behalf of herself and*
*others similarly situated*,

      Plaintiff,

v.                     Case No. 8:26-cv-408-VMC-SPF

BROADPEAK INSURANCE
SERVICES LLC,

      Defendant.

_____/

## ORDER

This matter is before the Court on consideration of Defendant Broadpeak Insurance Services LLC's Motion to Compel Individual Arbitration (Doc. # 23), filed on May 1, 2026. Plaintiff Laninka Office responded on June 5, 2026. (Doc. # 31). With the Court's leave, Broadpeak replied on June 18, 2026. (Doc. # 37). For the reasons that follow, a ruling on the Motion is deferred, and a trial will be held to determine if Ms. Office agreed to arbitrate.

## Discussion

On February 13, 2026, Ms. Office initiated this case under the Telephone Consumer Protection Act ("TCPA") and Florida Telephone Solicitations Act ("FTSA"), alleging that Broadpeak "made telemarketing calls to numbers on the

1

National Do Not Call Registry, including [Ms. Office's number]." (Doc. # 1 at 3). Alongside her individual claims, Ms. Office also "sues on behalf of a proposed nationwide class of other persons who received similar calls." (Id. at 3). According to the Complaint, Broadpeak "sent at least eleven text messages to [Ms. Office's] cellular telephone number . . . for the purpose of encouraging [Ms. Office] to purchase, apply for, or engage in [Broadpeak's] insurance services." (Id. at 7-10). Ms. Office allegedly "never signed up for [Broadpeak's] services and never requested to be contacted by [Broadpeak]." (Id. at 10).

On May 1, 2026, Broadpeak filed the instant Motion, seeking to compel arbitration of Ms. Office's claims against it. (Doc. # 23). According to Broadpeak, its "business records establish that on October 13, 2025, [Ms. Office] sought insurance quotes and discounts from Broadpeak by visiting SmarterAuto.com and completing a quote inquiry." (Id. at 2). SmarterAuto.com (hereinafter, the "Website") is "a website owned and operated by SmarterAuto, LLC, an affiliate of Broadpeak." (Id. at 1). Broadpeak argues that "[b]y visiting [the Website] and affirmatively submitting personal information through the site's online quote form, [Ms. Office] agreed to the [Website's] Terms of Use, which contain

2

a mandatory binding arbitration provision and class action waiver governed by the Federal Arbitration Act." (Id. at 1-2). In support, Broadpeak has submitted an exhibit of the Terms of Use (Doc. # 23-2) and a sworn declaration of Adam Schwartz, Broadpeak's Chief Growth Officer. (Doc. # 23-1). In relevant part, Mr. Schwartz declares that:

> Broadpeak's internal records establish that on October 13, 2025, [Ms. Office] visited the Website and affirmatively requested insurance quotes by completing [a] multi-page online quote form.

> Specifically, Broadpeak's records confirm that after entering her name and date of birth, [Ms. Office] entered her email address and clicked the "Continue" button on the "Email Sign-Up" page, thereby passing the statement regarding the Terms of Use. She the continued to the next page where she entered her remaining personal information - including her home address and cellular telephone number - and clicked the "Get Quotes" button beneath the Website disclosure.

> Without admitting any liability, Broadpeak could only have obtained [Ms. Office's] telephone number if she submitted a request on the Website.

> The personal information provided during this October 13, 2025, submission is consistent with the information alleged in [Ms. Office's] Complaint.

(Id. at 5-6). In concluding the Motion, Broadpeak states:

> If the Court determines that there is a disputed issue of fact as to [Ms. Office's] agreement to arbitrate her claims, Broadpeak demands a jury trial on the issue pursuant to Section 4 of the FAA.

(Doc. # 23 at 21).

3

Responding in opposition, Ms. Office argues that she "never agreed to the arbitration provision [Broadpeak] seeks to enforce." (Doc. # 31 at 1). In support, Ms. Office has submitted her own sworn declaration. (Doc. # 31-1). Therein, she declares that she has "never knowingly" visited the Website, "never knowingly" entered personal information on the Website, "never knowingly" created an account with the Website, and "never knowingly clicked a button or otherwise taken any action indicating that [she] agreed to [the Website's] Terms of Use, Privacy Policy, arbitration agreement, or class action waiver." (Id. at 1-2). She also states that "to the best of [her] knowledge, [she] did not provide the consent that [Broadpeak] claims was obtained through [the Website]." (Id. at 3).

Ms. Office further declares that she has "never seen, reviewed, or agreed to any arbitration agreement with [the Website], [Broadpeak], or any affiliated entity," that she "never agreed to arbitrate any disputes with [Broadpeak], [the Website], or any related entity," and that she "dispute[s] [Broadpeak's] contention that [she] assented to any Terms of Use, arbitration agreement, or class action waiver through use of [the Website]." (Id. 2-3). Accordingly, Ms. Office argues that "her declaration creates a genuine

4

issue of material fact regarding contract formation" and therefore "this Court should deny [Broadpeak's] motion to compel arbitration or, alternatively, permit discovery and conduct a trial on the issue of contract formation pursuant to Section 4 of the FAA." (Doc. # 31 at 5). The Court observes that Ms. Office does not specify whether she demands a bench trial or a jury trial on the issue of contract formation.

"The threshold issue presented here is whether a valid written agreement to arbitrate exists." Hilton v. Fluent, LLC, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018). "Even in this age of internet commerce, traditional contract-based principles of offer and acceptance still guide the determination of whether a valid arbitration agreement exists." Id. "[I]t is axiomatic that 'parties cannot be forced to submit to arbitration if they have not agreed to do so.'" Id. (citation omitted). "Moreover, once an agreement to arbitrate is put 'in issue,' the Federal Arbitration Act provides that the court 'shall proceed summarily to the trial thereof' and that '[i]f no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue.'" Id. (quoting 9 U.S.C. § 4).

"In reviewing a motion to compel arbitration, the Court applies 'a summary judgment-like standard,' and 'may conclude

5

as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement.'" Id. (quoting Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016)). Here, Ms. Office's sworn declaration creates a genuine issue of material fact regarding whether she agreed to arbitrate, in light of Broadpeak's business records that purportedly establish she visited the Website and thereby agreed to the arbitration provision in the Terms of Use.

Broadpeak's arguments in reply are unpersuasive. First, Broadpeak argues that Ms. Office's declaration "does not create a genuine dispute sufficient to defeat the Motion" because her "denials are not unequivocal" and because they "are hedged with the qualifier 'never knowingly.'" (Doc. # 37 at 3-4). However, a review of Ms. Office's declaration reveals that she made several unequivocal denials without any qualifiers. See (Doc. # 31-1 at 1-3) (declaring "I did not visit [the Website] on October 13, 2025," "I have never seen, reviewed, or agreed to any arbitration agreement," "I have never received insurance quotes from [the Website] as a result of any online inquiry," "I do not regularly shop for insurance online," "I dispute [Broadpeak's] contention that I assented

to any Terms of Use [or] arbitration agreement," and "I never agreed to arbitrate any disputes"). These unqualified, unequivocal denials create a genuine dispute as to whether Ms. Office agreed to arbitrate.

Second, Broadpeak argues, without citation to authority, that Ms. Office fails to create a genuine dispute because she "offers no corroborating evidence to substantiate her denial" and because her declaration "is entirely self-referential." (Doc. # 37 at 5). The Court disagrees. First, a sworn declaration is evidence and need not be "corroborated" by other evidence in order to create a genuine issue of material fact. See Bazemore, 827 F.3d at 1334 ("The Court acknowledges that plaintiff, too, has provided almost no evidentiary support for her contention that she never entered into an arbitration agreement with FBD. Plaintiff has not, for example, submitted an affidavit swearing under oath that she never received the Welcome Kit referenced in Mr. Ryan's declaration."); Hudson v. Babilonia, No. 3:14-CV-01646 MPS, 2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015)(finding that a genuine issue of material fact existed where defendants "supported their motion to compel arbitration with documents purportedly signed by" plaintiff but plaintiff produced an affidavit "den[ying] that he signed those documents").

7

Second, Ms. Office has declared that she "did not visit [the Website] on October 13, 2025" (Doc # 31-1 at 1), which directly contradicts Mr. Schwartz's declaration that "Broadpeak's internal records establish that on October 13, 2025, [Ms. Office] visited the Website and affirmatively requested insurance quotes." (Doc. # 23-1 at 5-6). "Where, as here, there is conflicting sworn testimony on the issue of whether the parties agreed to arbitrate, a [] trial is required." Jenkins v. Turner Indus. Group, LLC, No. 3:22-cv-9226-TKW-HTC, 2022 WL 19408075, at *4 (N.D. Fla. Oct. 25, 2022) (citations omitted).

Therefore, the Court defers ruling on the Motion to Compel Individual Arbitration. (Doc. # 23). The Court will issue a separate notice regarding the scheduling of limited discovery and a trial as to whether Ms. Office agreed to arbitrate. Accordingly, Ms. Office is hereby directed to file a notice by July 9, 2026, clarifying whether she demands a bench trial or jury trial on this issue.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of July, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

8